# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. ID. No. 1304026571 |
| | ) | |
| | ) | |
| KAHLIL D. LEWIS, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: August 6, 2018
Decided: November 5, 2018

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED AND RULE 61 COUNSEL'S MOTION TO WITHDRAW SHOULD BE GRANTED.

Kathryn S. Keller, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Christopher S. Koyste, Esquire, Law Offices of Christopher S. Koyste, LLC, Attorney for Defendant Kahlil D. Lewis.

PARKER, Commissioner

This 5th day of November, 2018, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court as follows:

## BACKGROUND AND PROCEDURAL HISTORY

Defendant Kahlil D. Lewis was arrested on April 30, 2013 and indicted on June 24, 2013. He was charged with the following offenses: one count of Murder Second Degree, two counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), one count of Reckless Endangering First Degree, and one count of Possession of a Firearm by a Person Prohibited ("PFBPP"). The PFBPP charge was pursuant to 11 *Del. C.* § 1448.

These charges stemmed from a confrontation between Defendant Lewis and Toney Morgan which ended in the death of Toney Morgan.

An information was filed on December 18, 2013 and a re-indictment was issued on December 23, 2013 modifying the PFBPP count to PFBPP pursuant to 11 *Del. C.* § 1448(e)(2). The re-indictment alleged that Mr. Lewis had negligently caused the death of Mr. Morgan while in possession of a firearm as a person prohibited (hereinafter referred to as "PFBPP-NCD").

Mr. Lewis admittedly is a person prohibited from possessing a firearm. Mr. Lewis admittedly killed Toney Morgan with a firearm. Mr. Lewis contended, nonetheless, that he was not guilty of PFBPP-NCD because he only possessed the firearm momentarily and used it only in self-defense, having wrestled it away from Morgan, who was attacking him. The Superior Court charged the jury that if Defendant Lewis only

1

possessed and used the weapon momentarily in self-defense, then he was not guilty of PFBPP.

The parties submitted their respective positions on the availability of a justification defense at trial in relation to the PFBPP charge. On November 20, 2013, the Superior Court ruled that the justification defense was available on the PFBPP charge.[1]

Against the advice of counsel, Lewis rejected the State's various plea offers on December 16, 2013, December 18, 2013 and January 6, 2014.[2]

On December 27, 2013, Mr. Lewis filed a *pro se* letter requesting that new counsel be appointed. The court denied the request without prejudice in a January 2, 2014 letter/order.[3]

The State dismissed two of the five indicted charges prior to trial: the murder and related weapons charge. Trial began on January 7, 2014 with the State proceeding on the remaining three charges: Reckless Endangering First Degree, PFDCF, and PFBPP-NCD. The defense's mid-trial motion for judgment of acquittal was denied by the court.[4]

Following a six-day jury trial, on January 14, 2014, the jury acquitted Lewis of the first two charges, Reckless Endangering First Degree and PFDCF. The jury convicted Lewis of PFBPP-NCD.

Lewis filed a motion for judgment of acquittal on January 17, 2014, which was denied by the court.[5] In addition to the motion for acquittal, filed by counsel, Lewis had written letters to the court. The court's Order denying the motion for judgment of

---

[1] See, Superior Court Docket No. 18.
[2] December 16, 2013 Final Case Review Transcript, at pg. 31; December 18, 2013 Hearing Transcript, at pgs. 2-9; January 6, 2014 Plea Rejection Colloquy Transcript, at pgs. 2-14; Superior Court Docket No. 26- letter from court denying Lewis' request for new counsel.
[3] Superior Court Docket No. 26- letter from court denying Lewis' request for new counsel.
[4] Superior Court Docket No. 44.
[5] *State v. Lewis,* 2014 WL 3706551 (Del.Super.).

acquittal also addressed and denied the claims raised by Lewis in his *pro se* letters to the court.[6]

On November 20, 2014, Lewis filed a Petition for a Writ of Habeas Corpus which was denied by the court on December 10, 2014.[7]

On February 13, 2015, Lewis was sentenced on the PFBPP-NCD conviction to twenty-five years at Level V, suspended after seven years for decreasing levels of supervision. Defendant Lewis was also sentenced contemporaneously for a violation of probation stemming from a drug dealing conviction for which he received eight years at Level V.[8]

Defendant Lewis filed a direct appeal to the Delaware Supreme Court. On August 4, 2016, the Delaware Supreme Court affirmed the judgment of the Superior Court.[9]

## FACTS

The facts of the incident at issue were set forth by the Delaware Supreme Court in its decision on Lewis' direct appeal.[10]

As stated by the Delaware Supreme Court, on April 27, 2013, Lewis drove to the 600 block of Jefferson Street in Wilmington in search of people who attacked his friend the day before.[11] When he arrived, Lewis found several adults and children hanging around the street. Words were exchanged, and shots were fired. During the exchange of gunfire, one of the people on the street, Toney Morgan, was shot dead. Witnesses claimed

---

[6] *State v. Lewis,* 2014 WL 3706551, at * 2-3 (Del.Super.).
[7] Superior Court Docket Nos. 53 & 54.
[8] *State v. Kahlil D. Lewis,* Criminal ID No. 1111020024.
[9] *Lewis v. State,* 144 A.3d 1109 (Del. 2016).
[10] *Lewis v. State,* 144 A.3d 1109 (Del. 2016).
[11] *Id.* at 1111-1112.

3

they saw Lewis shoot Morgan. Lewis was also shot in the face, though it was never established who shot him.[12]

## RULE 61 MOTION AND COUNSEL'S MOTION TO WITHDRAW

Lewis filed a timely *pro se* motion for postconviction relief and request for the appointment of counsel on July 26, 2017. Rule 61 counsel was appointed and given leave to amend Lewis' *pro se* motion. On October 11, 2017, Lewis filed a *pro se* motion for amendment of Rule 61.

On July 9, 2018, assigned counsel filed a Motion to Withdraw as Postconviction Counsel pursuant to Superior Court Criminal Rule 61(e)(6). Superior Court Criminal Rule 61(e)(6) provides that:

> If counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw. The motion shall explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a response to the motion within 30 days of service of the motion upon the movant.

In the motion to withdraw, Lewis' Rule 61 counsel represented that, after undertaking a thorough analysis of the Defendant's claims, counsel has determined that the claims are so lacking in merit that counsel cannot ethically advocate any of them.[13] Counsel further represented that, following a thorough review of the record, counsel was not aware of any other substantial claim for relief available to Lewis.[14] Lewis' Rule 61

---

[12] *Id.*

[13] See, Superior Court Docket Nos. 103, 104 & 105- Defendant's Rule 61 counsel's Motion to Withdraw along with the accompanying Memorandum in Support of Motion to Withdraw.

[14] Superior Court Docket No. 103, at pg. 31.

4

counsel represented to the court that there are no potential meritorious grounds on which to base a Rule 61 motion and has therefore sought to withdraw as counsel.[15]

On July 9, 2018, Lewis' Rule 61 counsel advised Lewis of his motion to withdraw and advised Lewis that he had the right to file a response thereto within 30 days, if Lewis desired to do so.[16] Despite the fact that over 90 days has elapsed, Lewis has not responded to counsel's pending Motion to Withdraw.

In order to evaluate Lewis' Rule 61 motion and to determine whether his Rule 61 counsel's motion to withdraw should be granted, the court should be satisfied that Rule 61 counsel made a conscientious examination of the record and the law for claims that could arguable support Lewis' Rule 61 motion. In addition, the court should conduct its own review of the record in order to determine whether Lewis' Rule 61 motion is so totally devoid of any, at least, arguable postconviction claims.[17]

## DEFENDANT'S RULE 61 MOTION IS WITHOUT MERIT

Lewis raised a number of claims in his *pro se* motion for postconviction relief, which he filed on July 26, 2017, and amended on October 11, 2017.

Before addressing each of Lewis' claims in turn, it is important to note that some of the claims raised herein are procedurally barred either because the claim had been previously adjudicated on direct appeal or because Lewis failed to raise the claim on direct appeal as required.

It is also important to emphasis that the evidence at trial against Lewis was overwhelming. A witness observed a person running from the scene of the shooting,

---

[15] *Id.*

[16] See, Superior Court Docket No. 103- letter dated July 9, 2018 advising Lewis of the Motion to Withdraw.

[17] *Matos v. State*, 2015 WL 5719694, *2 (Del.).

wiping blood from his face and hiding a gun on top of her neighbor's outdoor grill.[18] Lewis was suffering from a gunshot wound to his face and wearing clothing matching the witness' description.[19] A blood trail lead directly from the scene of the shooting to the outdoor grill (where the gun was hidden).[20] A 9-millimeter firearm was found on top of the grill and contained Lewis' DNA.[21] Lewis' DNA was also found on the blood trail leading from the scene to the grill, blood on the gun, blood on the grill, and blood around the area of the grill.[22]

Four 9-millimeter shell casings found at the scene of the shooting were confirmed as being fired from the 9-millimeter gun found hidden on the grill.[23] A 9-millimeter bullet recovered from Mr. Morgan's thigh wound could have been fired from the recovered 9-millimeter gun.[24]

Several witnesses present at the scene of the shooting testified that they either saw Lewis pull out a gun and begin shooting or saw Lewis walk up to the congregated individuals and engage in a conversation and/or argument.[25]

Lewis testified at trial that he engaged in a physical struggle with Mr. Morgan after he heard a click he believed to be from a gun and in wrestling with Mr. Morgan for control of the gun, it went off.[26]

---

[18] January 8, 2014 Trial Transcript, at pgs.152-161, 171-177.
[19] January 8, 2014 Trial Transcript, at pgs. 156-161, 171; January 10, 2014 Trial Transcript, at pgs. 83-85, 144-146, 159.
[20] January 7, 2014 Trial Transcript, at pgs. 59-66,
[21] January 7, 2014 Trial Transcript, at pgs. 61-65, 175-178; January 9, 2014 Trial Transcript, at pgs. 145-148.
[22] January 9, 2014 Trial Transcript, at pgs. 145-151.
[23] January 9, 2014 Trial Transcript, at pgs. 121.
[24] January 9, 2014 Trial Transcript, at pgs. 79-90, 122.
[25] January 7, 2014 Trial Transcript, at pgs. 79-82, 85-106; January 8, 2014 Trial Transcript, at pgs.35-40, 59-62, 66-70; January 10, 2014 Trial Transcript, at pgs.11-23; 29-30.
[26] January 10, 2014 Trial Transcript, at pgs. 140-152.

Despite the procedural bars and overwhelming evidence, each of Lewis' claims will be discussed in turn.

### Claim I: Trial Counsel Was Ineffective for Failing to Contest the Re-Indictment

In Lewis' *pro se* Rule 61 submission, Lewis claims that trial counsel was ineffective for failing to contest the re-indictment issued two weeks before trial.

To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong standard of *Strickland v. Washington*.[27] This test requires that defendant prove that trial counsel's performance was objectively unreasonable and that the defendant was prejudiced as a result.[28]

Under the first prong, judicial scrutiny is highly deferential. Courts must ignore the distorting effects of hindsight and proceed with a strong presumption that counsel's conduct was reasonable.[29] The *Strickland* Court explained that a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.[30]

Under the second prong, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.[31] In other words, not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.[32] Some errors will have a pervasive effort and some will have had an isolated, trivial effect.[33] The movant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[27] *Strickland v. Washington*, 466 U.S. 668 (1984).
[28] *Id.* at 694.
[29] *Id.* at 689.
[30] *Id.* at 690.
[31] *Id.* at 693.
[32] *Id.* at 693.
[33] *Id.* at 695-96.

proceeding would have been different.[34] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[35] The court must consider the totality of the evidence and must ask if the movant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.[36]

Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[37] Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance.[38] Moreover, there is a strong presumption that defense counsel's conduct constituted sound trial strategy.[39]

In *Harrington v. Richter,*[40] the United States Supreme Court explained the high bar that must be surmounted in establishing an ineffective assistance of counsel claim. In *Harrington*, the United States Supreme Court explained that representation is constitutionally ineffective only if it so undermined the proper functioning of the adversarial process that the defendant was denied a fair trial.[41] Counsel's representation must be judged by the most deferential of standards.[42]

Turning now to Lewis' first claim, Lewis claims that counsel was ineffective for failing to contest the re-indictment issued two weeks before trial. Lewis raised this issue on direct appeal and the Delaware Supreme Court fully adjudicated whether the re-

---

[34] *Dale v. State,* 2017 WL 443705, * 2 (Del. 2017); *Strickland v. Washington,* 466 U.S. 668, 694 (1984).
[35] *Id.*
[36] *Dale v. State,* 2017 WL 443705, * 2 (Del. 2017); *Strickland v. Washington,* 466 U.S. 668, 695-696 (1984).
[37] *Younger v. State,* 580 A.2d 552, 556 (Del. 1990).
[38] *Albury v. State,* 551 A.2d 53, 59 (Del. 1988); *Salih v. State,* 2008 WL 4762323, at *1 (Del. 2008).
[39] *Strickland v. Washington,* 466 U.S. 668, 689 (1984).
[40] *Harrington v. Richter,* 131 S.Ct. 770 (2011).
[41] *Id.* at * 791.
[42] *Id.* at *787-88.

indictment was valid and properly issued.[43]   This issue having already been fully adjudicated is now procedurally barred as previously adjudicated.[44]

On June 24, 2013, the Grand Jury indicted Lewis on, *inter alia,* a charge of PFBPP in violation of 11 *Del.C.* § 1448.[45]   On December 23, 2013, Lewis was re-indicted.   The re-indictment added an allegation that while Defendant, a person prohibited, possessed the firearm, he negligently caused Morgan's death in violation of 11 *Del.C* .§ 1448(e)(2).[46] Two weeks after the re-indictment, on January 7, 2014, Lewis went to trial.

Unknown to the State or Lewis, the General Assembly mistakenly repealed §1448(e)(2) on July 18, 2013.  It appears that when it amended parts of the previous subsection of §1448, the General Assembly inadvertently struck the language of §1448(e)(2) and then enacted the bill.[47]

Although a violation of §1448(e)(2) was a crime when the April 27, 2013 shooting and death occurred and when the Grand Jury first indicted Lewis on June 23, 2013, it was not a crime in December 2013 when the Grand Jury re-indicted Lewis and included the new charge.  The General Assembly re-enacted §1448(e)(2) on January 30, 2014, noting that it had been mistakenly repealed.[48]

On direct appeal, Lewis argued that the Superior Court should have dismissed the §1448(e)(2) charge in the December 2013 re-indictment because §1448(e)(2) was

---

[43]*Lewis v. State,* 144 A.3d 1109 (Del. 2016).
[44] Superior Court Criminal Rule 61(i)(4).
[45] Superior Court Docket No. 2- June 24, 2013 Indictment.
[46] Superior Court Docket No. 23- December 23, 2013 Re-Indictment
[47] *Lewis v. State,* 144 A.3d 1109, 1112 (Del. 2016).
[48] *Lewis v. State,* 144 A.3d 1109, 1112 (Del. 2016).

repeated at the time of the re-indictment, and Lewis suffered prejudice as a result of having the charge added so close to trial.[49]

Following a full, thorough and detailed analysis, the Delaware Supreme Court held that under Delaware's saving statute, 11 *Del.C.* §211(a), the State could indict Lewis for violating §1448(e)(2) because the crime was committed before repeal of the statute. The timing of the indictment, and the General Assembly's mistaken repeal, did not impact the validity of the indictment.[50]

As to Lewis' claim that the re-indictment should not have been allowed so close to the trial date, the Superior Court held that there was no reason to prevent it. The more serious felony was closely related to the original charges and the re-indictment did not come as a surprise to defense counsel.[51] The Superior Court held that there was not any good faith basis for defense counsel to oppose the re-indictment nor to request a trial continuance.[52] While the re-indictment was to Lewis' disadvantage, it was not unfairly prejudicial.[53] Moreover, the Delaware Supreme Court, in affirming the decision of the Superior Court, further held that the Grand Jury's indictment two weeks before trial was not plain error, Lewis was properly re-indicted and convicted under §1448(e)(2).[54]

Trial counsel cannot be deemed ineffective for failing to contest the re-indictment, because the Superior Court already held, and the Delaware Supreme Court already affirmed, that the re-indictment was valid. Moreover, the Superior Court already held

---

[49] *Lewis v. State*, 144 A.3d 1109, 1112 (Del. 2016).
[50] *Lewis v. State*, 144 A.3d 1109, 1115 (Del. 2016).
[51] *State v. Lewis*, 2014 WL 3706551, at *2 (Del.Super.).
[52] *Id.*
[53] *Id.*
[54] *Lewis v. State*, 144 A.3d 1109, 1115 (Del. 2016).

that defense counsel did not have a good faith basis to oppose the re-indictment or to request a continuance. This claim is without merit.

## Claim II: Failure to Request a Self-Defense Instruction on the PFBPP-NCD Charge

In Lewis' *pro se* Rule 61 submission, Lewis claims that trial counsel was ineffective for failing to request a self-defense instruction on the charge of PFBPP-NCD.

On direct appeal, the Delaware Supreme Court held that the Superior Court properly declined to give a self-defense instruction on the PFBPP-NCD charge as there was no basis under the factual record and relevant law to give this instruction on this charge.[55] Trial counsel cannot be deemed ineffective in failing to request a self-defense instruction on the PFBPP-NCD charge, when there was no basis to request that this instruction be given. This claim is without merit.

## Claim III: Superior Court Abused its Discretion in Sentencing Lewis

In Lewis' *pro se* Rule 61 submission, Lewis claims that the Superior Court abused its discretion by sentencing him with a closed mind. This claim was already raised, considered, and rejected by the Delaware Supreme Court on direct appeal.[56] This issue having already been fully adjudicated is now procedurally barred as previously adjudicated.[57]

## Claim IV: Counsel Failed to Share Discovery

Following Lewis' initial *pro se* Rule 61 submission on July 26, 2017, Lewis sought to amend his Rule 61 motion on October 11, 2017 and raise a number of additional claims. The first additional claim that Lewis sought to raise was that trial

---

[55] *Lewis v. State,* 144 A.3d 1109, 1117-1118 (Del. 2016).
[56] *Lewis v. State,* 144 A.3d 1109, 1118 (Del. 2016).
[57] Superior Court Criminal Rule 61(i)(4).

11

counsel failed to share discovery with him which allegedly prevented him from preparing a defense.

A protective order was issued by the Superior Court on August 26, 2013.[58] Under the terms of the protective order, trial counsel was prohibited from disclosing any identifying information of any third party to Lewis, Lewis' family or associates, without leave of the Court.[59] Trial counsel was also prohibited from using the identifying information to contact or attempt to contact the witnesses directly or indirectly without leave of the Court.[60] Thus, trial counsel was prohibited from providing discovery to Lewis.

The protective order was only recently modified, on April 6, 2018, to permit Lewis access to discovery.[61] Once the protective order was modified, counsel provided Lewis with a copy of his complete discovery with victim/witness addresses, telephone numbers and places of employment redacted.

Prior to sentencing, Lewis filed a complaint with the Office of Disciplinary Counsel ("ODC") against trial counsel for failing to provide him with witness statements. ODC summarily dismissed the complaint after trial counsel responded noting that there was a protective order in place which prevented him from doing so.[62]

Even if trial counsel had been permitted to provide discovery to Lewis, he was under no legal obligation to do so. There is no obligation of counsel to provide material given in discovery to the defendant. While it is good practice, there is no constitutional

---

[58] Superior Court Docket No. 12.
[59] *Id.*
[60] *Id.*
[61] Superior Court Docket No. 99.
[62] See, Appendix to Rule 61 Counsel's Motion to Withdraw, at A173.

12

requirement to do so.[63] Moreover, now that Lewis has been provided with the complete discovery provided to counsel, he has not identified any information contained in the discovery that he was previously unaware of that would have aided in his defense.

Lewis has failed to establish that his trial counsel was deficient or that he suffered actual prejudice as a result thereof. This claim is without merit.

### Count V: Trial Counsel Failed to File Certain Motions

Lewis claims that trial counsel was ineffective by failing to file motions to suppress the gun, for a proof positive hearing and for an evidentiary hearing.

An ineffective assistance of counsel claim based on the failure to file a motion is without merit if trial counsel lacked a legal or factual basis to do so.[64]

Lewis has not explained what the purpose of an evidentiary hearing would have been, why one was needed or what issues would have been addressed during it. Conclusory, unsupported and unsubstantiated allegations are insufficient to establish a claim of ineffective assistance of counsel.[65] Lewis has not substantiated his claim that there was any good faith basis to request an evidentiary hearing.

As to the allegation that trial counsel should have requested a proof positive hearing, again, Lewis does not substantiate his claim as to why there was any good faith basis to request such a hearing. This unsupported allegation is insufficient to establish an ineffective assistance of counsel claim.

---

[63] *State v. Winn*, 2004 WL 3030023, *2 (Del.Super.), *affirmed*, 2005 WL 3357513 (Del.); *State v. Robinson*, 2012 WL 1415645, *3 (Del.Super.), *affirmed*, 2012 WL 4162948 (Del.).

[64] *State v. Exum*, 2002 WL 100576, *2 (Del.Super.), *affirmed*, 2002 WL 2017230, *1 (Del.); *McAllister v. State*, 2010 WL 3398949, *2 (Del.).

[65] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990); *State v. Brown*, 2004 WL 74506, *2 (Del.Super. 2004)(conclusory and unsubstantiated allegations of unprofessional conduct are insufficient to support a motion for postconviction relief).

13

As to the allegation that trial counsel should have filed a motion to suppress the gun, there does not appear to be any good faith basis for the filing of such a motion and no reason to believe that any such motion would have been successful. The evidence was overwhelming that Lewis was the individual who hid the gun. A witness observed Lewis hiding the gun and his DNA was found on the gun. Lewis' DNA was also found on the blood on the gun, the outdoor grill where the gun was hidden, and the blood trail leading from the shooting to the grill.

Lewis contends that because the homeowner touched the gun before giving it to law enforcement, this somehow tainted the chain of custody, providing a basis for trial counsel to seek suppression of the firearm. The record indicates that the homeowner, a private citizen, merely wrapped the gun in a towel and notified a police officer canvassing the area that he had found the gun.[66] There is no indication that this impacted the chain of custody. It also did not impact the overwhelming evidence that Lewis was the individual who hid the gun.

Moreover, Lewis does not allege that the police or other persons acting on behalf of the State did anything improper. Suppression issues only arise from allegations of improprieties stemming from governmental conduct not from the conduct of private citizens acting on their own accord.

There does not appear to be any basis for the filing of a motion to suppress the gun and no reason to believe that any such motion would have been successful. Lewis has failed to establish that counsel's decision not to file a suppression motion was deficient in any respect or that he suffered any prejudice as a result thereof.

---

[66] Rule 61 counsel's appendix to Motion to Withdraw, at A15; January 8, 2014 Trial Transcript, at pgs. 178-180.

Lewis' claim that counsel was ineffective for failing to file the aforementioned motions is without merit.

### Count VI: Trial Counsel Failed to Move for a Mistrial

Lewis contends that trial counsel should have filed a motion for a mistrial or requested permission to question jurors after members of the jury impermissibly spoke with the chief investigating officer. However, the trial record and applicable case law establishes that this would have been an inappropriate and unsuccessful response to the alleged error.

On day two of the trial, several members of the jury asked the chief investigating officer if he could find someone to unlock the jury room, because they could not access the room.[67] There was no further communication between the jurors and the officer, and the State immediately put the issue on record.[68]

Lewis' trial counsel advised the court that he had overheard the exchange and that it did not present any problems.[69]

Although Lewis contends that trial counsel was ineffective for not requesting that the jurors be questioned about this communication, a *voir dire* is appropriate when the court determines that the jury "may have been exposed during the course of trial to an extraneous influence that raises a serious question of possible prejudice"[70], which did not occur in this case. Lewis also contends that trial counsel was likewise ineffective for

---

[67] January 8, 2014 Trial Transcript, at pgs. 3-4.
[68] *Id.*
[69] *Id.*
[70] *Dixon v. State,* 2014 WL 4952360, *3 (Del.).

15

failing to request a mistrial, but mistrials are only granted in cases of egregious prejudice and when there are "no meaningful and practical alternatives" to that remedy.[71]

The brief exchange between the jurors and officer concerning a trivial matter that had nothing to do with the trial did not raise any serious question of possible prejudice and was not enough to warrant a *voir dire,* let alone a mistrial. Moreover, Lewis has not articulated the specific allegations of prejudice which resulted by this innocuous error.

This claim is without merit. Trial counsel cannot be deemed ineffective for failing to pursue a meritless issue.

### Count VII: Trial Counsel Did Not Take Adequate Time to Prepare Defense

Lewis was initially charged with five offenses including murder. Prior to trial, the State agreed to drop two of the five indicted charges- murder and the related weapons charge. Following the six-day jury trial, through trial counsel's efforts, Lewis was acquitted of two of the remaining three charges, Reckless Endangering First Degree and PFDCF. Lewis was convicted of only one of the charges- PFBPP-NCD.

Lewis now asserts that trial counsel did not take adequate time to meet with him and review materials to prepare a defense in advance of trial. However, Lewis does not identify any way in which his defense strategy would have changed, additional information that would have been uncovered, or how the outcome of the proceedings would have been different if trial counsel had spent more time meeting with him prior to trial or done something more. This claim is unsubstantiated, unsupported and conclusory. This claim is without merit.

---

[71] *Dawson v. State,* 637 A.2d 57, 62 (Del. 1994).

16

## Count VIII:  Trial Counsel Failed to Keep Track of and Subpoena a Key Witness

Lewis alleges that trial counsel failed to keep track of and subpoena a key witness on his behalf at trial.  Trial counsel had the witness at issue interviewed by an investigator from the Public Defender's Office.  This witness had been with Lewis prior to the shooting.  Trial counsel's decision not to subpoena this witness was a strategic decision.  The witness' statements concerning the shooting would not have been helpful to Lewis and would have significantly undermined the defense trial strategy.

Rule 61 counsel represents that based on a review of her statements given to the investigator that the decision not to call this witness at trial "was extremely wise."  The decision as to whether or not to call a witness and how to examine and/or cross-examine witnesses who are called are tactical decisions.[72]  Great weight and deference are given to tactical decisions by the trial attorney.  There is a strong presumption that defense counsel's conduct constituted sound trial strategy.[73]

Trial counsel was not deficient for not calling a witness at trial that would have been detrimental to the defense trial strategy.  Because this individual's testimony would not have been helpful to Lewis' defense, he is unable to demonstrate ineffectiveness or resulting prejudice from counsel's decision not to subpoena her.  This claim is without merit.

## Count IX:  Trial Counsel Failed to Request a Continuance After Re-Indictment

This claim was already addressed in Count I.  Lewis alleges that trial counsel was ineffective for failing to contest the re-indictment issued two weeks before trial in order to familiarize himself with the §1448(e)(2) charge.

---

[72] *Outten v. State*, 720 A.2d 547, 557 (Del.  1998).
[73] *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Harrington v. Richter*, 131 S.Ct. 770 (2011).

17

The Superior Court already addressed this issue. "As to Defendant's questioning why the re-indictment was allowed, the answer is that there was no reason to prevent it. The more serious felony was closely related to the original charges and the re-indictment did not come as a surprise to defense counsel. The court does not see that there was a good basis for defense counsel to oppose the re-indictment, nor to request a trial continuance."[74]

The Superior Court already held that there was no good-faith basis for trial counsel to request a trial continuance as a result of the re-indictment. Trial counsel cannot be deemed ineffective for not requesting a continuance when there was no good faith basis to do so. This claim is without merit.

### Count X: Trial Counsel Failed to Make Objections During Trial

Lewis alleges that trial counsel was ineffective by failing to make objections during trial when he should have. Lewis has identified only one instance in which trial counsel should have objected but did not.

The one instance cited by Lewis is when the State's witness made statements about a fight she was not at and about retrieving property from a residence she was not at. Lewis does not identify this witness, but from the trial transcripts, it appears that Lewis is referring to Ms. Jocelyn Morales' testimony that she witnessed a friend of her family and a friend of Lewis get into a fight the night before the shooting at which Lewis was also present.[75]

Contrary to Lewis' representation in his Rule 61 motion, trial counsel did object to Ms. Morales' testimony on the belief that she was not present during the fight and was

---

[74] *State v. Lewis,* 2014 WL 3706551, *2 (Del.Super.).
[75] January 8, 2014 Trial Transcript, at pgs. 15-20.

18

simply repeating what she had heard from others.[76] However, trial counsel's objection was overruled because Ms. Morales testified that she was, in fact, present during the fight.[77]

Throughout the trial, trial counsel made numerous objections where it was appropriate to do so. Lewis has not identified any other instance in which trial counsel should have objected, but did not. Lewis has not explained how he was prejudiced by trial counsel's failure to make more objections during trial. Lewis has not alleged with specificity the errors made by trial counsel nor has he established actual prejudice as a result thereof. Conclusory, unsupported and unsubstantiated claims are insufficient to support a claim for ineffective assistance of counsel. This claim is without merit.

### Count XI: The State Committed Prosecutorial Misconduct

Lewis alleges that the State committed prosecutorial misconduct by making frequent assertions that could not be substantiated and which misled jurors.

In accordance with the procedural mandates, Lewis was required to raise his claims, with the exception of his ineffective assistance of counsel contentions, in the trial court and/or on direct appeal.[78] Rule 61(i)(3) bars as procedurally defaulted any claim that was not asserted in proceedings leading to the judgment of conviction unless, under Rule 61(i)(5), the claim asserts that the Court lacked jurisdiction, pleads with particularity that new evidence exists that creates a strong inference of actual innocence, or a new rule of constitutional law, retroactively applied to the movant's case, renders the conviction invalid.[79] This is a claim of prosecutorial misconduct, not ineffective assistance of

---

[76] January 8, 2014 Trial Transcript, at pg. 17.
[77] *Id.*
[78] Super.Ct.Crim.R. 61(i)(3).
[79] Super.Ct.Crim.R. 61(i)(3) & 61(i)(5).

19

counsel, and it could have been raised in the trial court or on direct appeal. As there is no new evidence creating a strong inference of actual innocence nor a new rule of constitutional law retroactively applied which would render his conviction invalid, the procedurally bar remains in place. Thus, this claim is procedurally barred for Lewis' failure to raise this claim in the trial court and/or on direct appeal.[80]

Even if this claim was considered on its merits, it would be unsuccessful. Lewis contends that prosecutorial misconduct occurred due to: 1) the State's failure to connect the bullets removed from Mr. Morgan to the gun in the State's custody; and 2) the prosecutor having the medical examiner stand over her firing a hypothetical gun as she lay on the floor to demonstrate how Mr. Morgan may have been shot.

Prosecutorial misconduct is evaluated under a three-part test: 1) the closeness of the case; 2) the centrality of the issues affected by the error; and 3) the steps taken to mitigate the effects of the error.[81] Improper prosecutorial conduct rises to the level of constitutional error when the impact of the misconduct is to distract the trier of fact and thus raise doubts as to the fairness of the trial.[82] In the subject action, however, Lewis has not even established that the State's conduct was impermissible, let alone that such conduct was so egregious as to raise doubts as to the fairness of the trial.

As to the recovered bullets not matching the gun, the firearms expert testified that he could say with a reasonable degree of scientific certainty that the four 9-millimeter cartridge cases recovered from the scene of the shooting were fired from the 9-millimeter handgun in the State's possession.[83]

---

[80] Super.Ct.Crim.R. 61(i)(3).
[81] *Hunter v. State,* 815 A.2d 730, 737 (Del. 2002).
[82] *Id.* at 737-738.
[83] January 9, 2014 Trial Transcript, at pgs. 79-82.

20

As to the bullets removed from Mr. Morgan, the expert testified on direct examination that one of the bullets removed was "gouged, distorted, deformed" and that 99% of the jacket had peeled off. It hit something really hard during its travel that caused the jacket to come off.[84] Because of this, it was impossible to determine the caliber of the bullet let alone whether it was fired from the recovered 9-millimeter gun.[85]

Regarding the second bullet removed from Mr. Morgan, the expert testified on direct examination that although he could determine that the caliber was a 9-milllimeter, his results were inconclusive as to whether it was fired from the 9-millimeter gun in the State's possession.[86]

Trial counsel conducted a thorough cross-examination of the firearms expert emphasizing that some of the bullets could not even be matched with each other, let alone with any one firearm.[87]

On redirect examination, the State emphasized that the four cartridge cases could be determined as having been fired from the 9-millimeter gun recovered and that all of the 9-millimeter and .38 class bullets could have been fired by a 9-millimeter firearm.[88] It just could not be determined whether they were fired from the particular 9-millimeter gun in the State's possession.[89]

During closing arguments, the State noted that the 9-millimeter bullet removed from Mr. Morgan's leg "is the same caliber bullet that is used in the gun that had the

---

[84] January 9, 2014 Trial Transcript, at pgs. 83-86.
[85] Id.
[86] January 9, 2014 Trial Transcript, at pgs. 87-90.
[87] January 9, 2014 Trial Transcript, at pgs. 97-119.
[88] January 9, 2014 Trial Transcript, at pgs. 120-122.
[89] January 9, 2014 Trial Transcript, at pgs. 122.

defendant's DNA on it."[90] The State also noted that the .38 class bullets could have been fired from a 9-millimeter gun.[91]

There is nothing inaccurate in the comments made by the State during direct and cross-examination of the firearms expert and during closing arguments. The State never asserted that the recovered 9-millimeter bullets were shot from the specific 9-millimeter handgun that was recovered, only that they *could have been*. The State's comments were not impermissible, inappropriate or inaccurate, let alone egregious enough to raise doubts as to the fairness of the trial.

Similarly, the prosecutor's demonstration with the medical examiner does not amount to prosecutorial misconduct. On direct examination, the medical examiner testified that the gunshot wound to Mr. Morgan's leg traveled "steeply upward in the left thigh."[92] In response to the State's questioning, the medical examiner testified that he could not tell at what distance Mr. Morgan was shot, but that based upon the steep upward trajectory, if Mr. Morgan was laying on the ground, the shooter would have to be by Mr. Morgan's feet with the gun toward Mr. Morgan's foot and directed toward his head.[93] Following this testimony, the prosecutor had the medical examiner demonstrate for the jury the explanation he had just given.[94]

On cross-examination, trial counsel emphasized that the medical examiner was unable to determine which wound Mr. Morgan received first and that the demonstration with the prosecutor was merely a hypothetical and only one possible scenario.[95] The

---

[90] January 13, 2014 Trial Transcript, at pg. 22.
[91] January 13, 2014 Trial Transcript, at pg. 23.
[92] January 8, 2014 Trial Transcript, at pgs. 118-119.
[93] January 8, 2014 Trial Transcript, at pgs. 121-122.
[94] January 8, 2014 Trial Transcript, at pgs. 122-123.
[95] January 8, 2014 Trial Transcript, at pgs. 127-134.

medical examiner testified that there are "absolutely" other possible scenarios in which the same trajectory could be achieved and that he could not say with scientific certainty that the State's hypothetical is what actually occurred.[96] He testified that he was only responding to the specific question asked by the State.[97]

Based upon the entirety of the medical examiner's testimony, the State's demonstration was not misleading. The jury heard the medical examiner's follow-up explanation that it was only a hypothetical and that many other scenarios could also have resulted in the same trajectory. There was nothing improper about the State using a demonstrative tactic to explain the medical examiner's findings, and trial counsel made it clear on cross-examination that this was no more than one of many hypothetical explanations for what had occurred. The prosecutor did not engage in any inappropriate conduct let alone conduct egregious enough to raise doubts as to the fairness of the trial.

This claim is procedurally barred and without merit.

### Count XII: The State's Case Was Premised On an Improper Theory

Although it is hard to discern, it appears that Lewis is claiming that the State committed prosecutorial misconduct based upon its theory of the case as argued at trial. This claim of prosecutorial misconduct would be barred under Rule 61(i)(3), as procedurally precluded for failure to raise it on direct appeal.

This claim is also without merit. A review of the record does not reveal any action by the State that would constitute prosecutorial misconduct in presenting its theory of the case at trial.

---

[96] January 8, 2014 Trial Transcript, at pg. 133.
[97] January 8, 2014 Trial Transcript, at pg. 133.

The State proceeded to trial on three charges: PFBPP-NCD, PFDCF and Reckless Endangering First Degree. The State had dismissed the murder charge and related weapons charge prior to trial.

Lewis seems to contend that the State's theory of the case was that Lewis shot Mr. Morgan in retaliation for a prior dispute that occurred between mutual acquaintances, and because the State had dismissed the murder charge, it was somehow improper to pursue this theory at trial. Lewis appears to contend that the State argued that Lewis had intentionally armed himself with a firearm so that he could go find, shoot and kill Mr. Morgan. The record, however, reflects otherwise.

The record reflects that the State's argument was that Lewis went to confront a group of individuals, who happened to include Mr. Morgan, to discuss a prior dispute involving an acquaintance, while armed with a gun, and that this confrontation escalated into a gun battle which resulted in Mr. Morgan's death.[98] During closing statements, the State argued that Lewis' conduct started a gun battle which in turn resulted in the death of Mr. Morgan.[99]

The record reflects that the State was focusing on proving negligence, not intentional conduct, and arguing to the jury that Lewis' careless actions, regardless of intent, caused the death of Mr. Morgan.

This claim of any prosecutorial misconduct is procedurally barred and without merit.

---

[98] January 7, 2014 Trial Transcript, at pgs. 4-26.
[99] January 13, 2014 Trial Transcript, at pgs. 18-19.

24

## CONCLUSION

Lewis has failed to establish that his trial counsel was deficient in any regard or that he suffered actual prejudice as a result thereof. The court has reviewed the record carefully and has concluded that Lewis' Rule 61 motion is without merit and devoid of any other substantial claims for relief. The court is also satisfied that Lewis' Rule 61 counsel made a conscientious effort to examine the record and the law and has properly determined that Lewis does not have a meritorious claim to be raised in his Rule 61 motion.

For all of the foregoing reasons, Lewis' Motion for Postconviction Relief should be denied and Rule 61 counsel's motion to withdraw should be granted.

**IT IS SO RECOMMENDED.**

Commissioner Lynne M. Parker

oc: Prothonotary
cc: Joseph M. Leager, Jr., Esquire
Mr. Kahlil D. Lewis (SBI# 00629845)

25